UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

CLIFFORD RAYMOND SALAS,

   Petitioner,        NO. 22-cv-681-RB-GJF
                  NO. 12-cr-3183-RB-GJF-3

  vs.

UNITED STATES OF AMERICA,

   Respondent.

## <u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

THIS MATTER is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion"). CV ECF 6.[1] The United States responded [CV ECF 16] ("Response"), and Petitioner did not reply. Having reviewed the briefing and the record, and otherwise being fully advised, the Court **RECOMMENDS** for the reasons that follow that the Motion be **DENIED** and a certificate of appealability be **DENIED**.[2]

## I.  BACKGROUND

Around 2:00 a.m. on August 31, 2012, at a strip mall in Las Cruces, Petitioner Clifford Salas ("Salas") used a metal bar to smash the front window of a tattoo parlor called Irish Ink. CR ECF 367 at 137. Through the broken window, Salas threw a fire bomb into the business. *Id*. The fire bomb immediately exploded upon impact. *Id.* Salas then ran to a car driven by his co-

---

[1] All Court document citations with CV refer to the civil case 22-cv-681-RB-GJF, and all Court document citations with CR refer to the criminal case 12-cr-3183-RB-GJF-3.

[2] Before issuing this PFRD, the Court considered whether an evidentiary hearing was necessary, as instructed by Rule 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Because the outcome of this Motion turns on matters of law and its recommended disposition requires no further factual development, the Court concluded that no evidentiary hearing was necessary.

defendant, Thomas Salazar, to grab another bottle of homemade napalm, which he threw through the same window. *Id* at 138. As the building began to burn, Salas and Salazar drove off. *Id.*

Dozens of Las Cruces firefighters responded and extinguished the fire. *Id.* at 10-16. The fire caused extensive property damage, including smoke damage to the neighboring tenants in the strip mall. *Id.* at 51, 83. Irish Ink had to shut down for six months after the firebombing, and it took two years for the business to recover. *Id.* at 180.

An extensive federal investigation determined that Salas and Thomas Salazar committed the firebombing at the urging of Thomas Salazar's brother, Conrad Salazar who had pledged to burn Irish Ink to the ground after his previous employees left his own tattoo shop to open the rival business. A grand jury indicted Salas for four offenses related to the firebombing: Count 1, conspiracy to commit arson, in violation of 18 U.S.C. § 844(n); Count 2, malicious damage or destruction of a building by means of fire or explosive, in violation of 18 U.S.C. §§ 844(i) and aiding and abetting, in violation of 18 U.S.C § 2; Count 3, using, carrying, or possessing a destructive device in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A), (B)(ii); and Count 4, being a felon in possession of an explosive, in violation of 18 U.S.C. §§ 842(i) and 844(a). CR ECF 256.

On March 9, 2015, Salas proceeded to trial. The government put on a robust case, eliciting testimony from numerous witnesses, including a fire investigations expert, several law enforcement personnel, and two FBI agents who investigated the case.  The government also called Shane Brown (the proprietor of Irish Ink and the victim in the case), Hector Corral (who helped Salas evade the police), and Salas' co-defendant, Thomas Salazar, who testified pursuant to a plea agreement that required him to provide truthful cooperation. CR ECFs 367-68.

Shane Brown explained that he previously managed Conrad's tattoo shop, but he and a number of employees quit due to Conrad's run-ins with the law and his aggressive management style. *Id.* at 171-76. After Brown ended his business relationship with Conrad, he and another of Conrad's previous employees opened the new tattoo shop, Irish Ink. *Id.* Between the time Brown left Conrad's shop and the time he opened a new shop, Conrad threatened him, stating that if Brown opened his own shop, Conrad would "burn it to the ground." *Id.* at 176. While Brown initially believed Conrad's threat was nothing serious, Brown immediately knew Conrad was behind the firebombing when he found his shop in flames. *Id.* at 176, 179.

Thomas Salazar, Salas' getaway driver and Conrad's brother, recounted the events leading up to the firebombing, the firebombing itself, and Salas' attempts to cover up the crime. CR ECF 367 at 113-138.[3] He detailed seeing Conrad roughly a week before the incident making homemade napalm by adding gasoline to a pot on a lit stove in his kitchen. *Id.* at 113. When he asked Conrad what he was doing, Conrad replied "getting ready for these mother-effers." *Id.* Thomas also testified that Salas pledged to commit the firebombing on Conrad's behalf the night of the crime. *Id.* at 121, 127. Salas said "F' it, I'll do it" in response to Conrad's continued complaints about his former employees, who had opened Irish Ink. *Id.* Salas then prepared for the firebombing by grabbing a metal bar to break the business's front window and bringing along two glass bottles filled with the homemade napalm. *Id.* at 129.

Thomas described Salas' violent attack on Irish Ink, including the sheer force Salas used to break the shop's window. *Id.* at 137. After breaking the window to the shop, Salas ran towards the vehicle, grabbed one of the bottles, and threw it through the window, causing a fiery explosion. *Id.* Once the shop was in flames, Salas ran back to the vehicle to retrieve the second bottle of

---

[3] Guero is another name for Petitioner Raymond Salas. CR ECF 367 at 119.

homemade napalm and threw it through the broken window. *Id.* at 138. Thomas recounted Salas' efforts to evade police after the crime, including switching vehicles. CR ECF 368 at 19-26.

Hector Corral also testified about the efforts Salas made to evade the police. *Id.* at 141. Corral detailed how Salas came to his door around 2:00 or 2:30 a.m. on the night of the crime, asking to borrow a car and some clothes. *Id.* at 145. Corral explained that Salas smelled like gasoline. *Id.* at 146. Corral also testified that after August 31, and while the investigation was ongoing, Salas arrived at Corral's house to ask why Corral told the police about the firebombing. *Id.* at 160. Salas advised Corral to "do the right thing and not come to court." In addition, Salas told Corral to call Salas' attorney to recant his statement implicating Salas in the firebombing. *Id.* Salas also offered Corral's wife a black Expedition SUV as a bribe if she would tell the police that Corral was involved in the firebombing. *Id.* at 160-61.

On March 11, 2015, the jury found Salas guilty on all counts. CR ECF 369 at 175-76. On June 21, 2016, United States District Judge Robert Brack sentenced Salas to the mandatory minimum for these charges, 35 years of imprisonment. CR ECF 340.

On July 4, 2016, Salas filed his notice of appeal. On May 31, 2018, pursuant to *Johnson v. United States*, 571 U.S. 591 (2015), the Tenth Circuit vacated Salas' § 924(c) conviction on the ground that arson was not a qualifying "crime of violence" and remanded for resentencing. CR ECF 400-1 and 400-2; *United States v. Salas*, 889 F.3d 681 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 2773 (2019). On October 14, 2020, Judge Brack held a new sentencing hearing, imposed an upward variance, and sentenced Salas to 180 months imprisonment as to Counts 1, 2, and 4 to run concurrently. CR ECF 418. Count 3 was dismissed on motion from the government. CR ECFs 419-20.

Following resentencing, Salas again appealed, this time challenging the upward variance and arguing that the 180-month sentence for Count 4, felon in possession of an explosive, exceeded the statutory maximum of 120 months. CR ECF 421. The Tenth Circuit affirmed the upward variance but remanded for resentencing on Count 4 because the 180-month sentence exceeded the statutory maximum. CR ECF 435-1. *United States v. Salas*, No. 20-2158, 2022 WL 782629 (10th Cir. Mar. 15, 2022), *cert. denied*, 143 S. Ct. 283 (2022). On second remand, the parties agreed that the sentence for Count 4 should be reduced to 120 months and that no hearing was required. Accordingly, a second amended judgment was entered on July 12, 2022. CR ECF 437.

Salas submitted a handwritten letter in this Court challenging his sentence on September 12, 2022. CR ECF 439; CV ECF 1. On February 28, 2023, the Court ordered Salas to file an amended petition on the proper form. CV ECF 4. Salas did so on April 3, 2023. CV ECF 6. The United States filed its Response on August 7, 2023. CV ECFs 10, 16.

## II.     PETITIONER'S CLAIMS

Salas essentially makes a single claim of ineffective assistance of counsel. CV ECF 6 at 4. While Salas vaguely references an inability to "confront his accusers," a liberal construction of Salas' claim—which is merely three sentences long—supports the conclusion that Salas is instead arguing that his attorney was ineffective for failing to introduce an affidavit from Conrad Salazar and failing to call two allegedly exculpatory witnesses. *Id.* Salas argues that his counsel was ineffective because this "evidence was never used to free" him. *Id.*

The United States contends that Petitioner has failed to demonstrate either prong of the *Strickland* test because his cursory allegations do not show that his counsel was ineffective or that he was prejudiced from his counsel's representation. ECF 16 at 10-12.

### III.   LEGAL STANDARD

#### A.   28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct [his] sentence," when, *inter alia*, "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). To state a cognizable claim for relief under § 2255, a defendant must allege that the "error constituted a fundamental defect which inherently result[ed] in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted) (superseded by statute on other grounds). A court must presume "that the proceedings leading to the conviction were correct." *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)).

Because Petitioner is *pro se*, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

#### B.   Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a defendant the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000) ("It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States."). To succeed under *Strickland*, a petitioner must show both that "counsel's representation fell below an objective standard of reasonableness" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687–88. Courts "may address the performance and prejudice components in any order, but need not address both if [the petitioner] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998).

To establish the first prong, a petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 690). This requires the petitioner to establish that the "attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the context of a jury verdict, the prejudice that a habeas petitioner must establish is that—but for counsel's unreasonable conduct—there is a reasonable possibility that the jury would have had reasonable doubt as to the conviction. *See Weaver v. Massachusetts*, 582 U.S. 286, 303 (2017) ("[H]e has not shown prejudice in the ordinary sense, *i.e.*, a reasonable probability that the jury would not have convicted him . . . .").

## IV.   ANALYSIS

Salas has done nothing to demonstrate either prong of the *Strickland* test. It is not clear what he alleges the purported affidavit from Conrad Salazar would have said or how the two witnesses would have testified. Nor does he explain how any of it would have made any difference. Without substantially more evidence, the Court cannot conclude that Salas' attorney's failure to introduce this affidavit or call these witnesses "amounted to incompetence under 'prevailing professional norms, . . . .'" *Cullen*, 563 U.S. at 189. Nor can the Court conclude that, if this evidence had been introduced, there would have been "a reasonable probability that the jury would not have convicted him . . . ." *Weaver*, 582 U.S. at 303. Salas has the burden to demonstrate both

of these prongs, *see Strickland*, 466 U.S. at 687–88, and the mere three sentences of his motion—even liberally construed—fail to come close to demonstrating either one.

Salas' evidence especially falls flat on the prejudice prong because the United States put on a powerful case at trial. Some of the most compelling evidence was when Salas' co-defendant, Thomas Salazar, testified against him. Thomas walked the jury through the whole crime, including when he saw Salas bash in Irish Ink's window and hurl two fire bombs inside. He also described when Salas committed to firebombing Irish Ink by saying "F it I'll do it" in response to Conrad's complaints about his former employees at Irish Ink. Finally, Thomas recounted the steps Salas took to avoid apprehension, which was corroborated by a second witness, Hector Corral.

The jury heard from numerous other witnesses, including a fire investigations expert, several law enforcement personnel highlighted by the two FBI agents who investigated the case, and Shane Brown, the victim in the case. The government also presented voluminous trial exhibits including photos and videos. The evidence against Salas was exceedingly strong. Against that mountain of evidence, Salas' failure in the instant motion to explain the content of the purported affidavit or the testimony of the alleged exculpatory witnesses is fatal to his claim.

### V.   CONCLUSION

For the foregoing reasons, the Court recommends that Petitioner's Motion be **DENIED** and this case **DISMISSED WITH PREJUDICE.** The Court further recommends, pursuant to Rule 11(a) of the Rules Governing Section 2255 cases, that a certificate of appealability be **DENIED**.

**SO RECOMMENDED**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**